815 So.2d 476 (2002)
Philip McILWAIN, Appellant,
v.
Delores McILWAIN, Appellee.
No. 2000-CA-02062-COA.
Court of Appeals of Mississippi.
April 30, 2002.
*477 Nancy E. Steen, Hattiesburg, attorney for appellant.
Shirlee Fager Baldwin, Hattiesburg, attorney for appellee.
Before McMILLIN, C.J., LEE, and BRANTLEY, JJ.

PROCEDURAL HISTORY
LEE, J., for the court.
¶ 1. Philip and Delores McIlwain were married in August 1978, and Delores was granted a divorce in September 2000 by the Lamar County Chancery Court on *478 grounds of uncondoned adultery. Pursuant to the judgment, the chancellor distributed property and assets. Philip filed a motion for reconsideration in November 2000, which was denied, and he now appeals to this Court seeking relief.

FACTS
¶ 2. Philip and Delores McIlwain worked throughout their marriage to accumulate assets, buying, selling and renting various parcels of property to earn profits. At the time of the divorce, Philip had been working at Georgia Pacific for nearly sixteen years and earned approximately $2,600 per month. Delores had worked for five years at First Family Financial Services earning approximately $1,600 per month. In their stipulation, the parties agreed to valuations of certain properties and assets, plus agreed to split the values of each's pension plan equally.
¶ 3. On appeal, Philip argues that the chancellor erred in his division of marital assets, specifically concerning funds Delores withdrew from their joint checking account, that the chancellor erred in including as a marital asset a home purchased by Philip after the separation but prior to the divorce, that the chancellor abused his discretion in awarding alimony to Delores, and that Delores did not submit an accurate financial statement to the court.

DISCUSSION OF THE ISSUES

I. DID THE CHANCELLOR ERR IN HIS DIVISION OF MARITAL ASSETS?
¶ 4. With this first issue, Philip argues the chancellor erred in his division of marital assets. Philip specifically takes issue with the chancellor's finding the residence Phillip purchased in November 1999, six months after he and Delores separated, was marital property. Philip also argues that certain cash assets were improperly omitted from the property distribution. "The court's standard of review in domestic relations matters is limited. We will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." Traxler v. Traxler, 730 So.2d 1098 (¶ 13) (Miss.1998).

a. House
¶ 5. In November 1999 six months after the couple's separation, Philip purchased a home in Purvis, withdrawing funds from the parties' credit union account to make the purchase. Delores testified that Philip gave her a key to this home, that she attended the loan closing on the house, and that Philip told her he bought the home for the two of them to live in as they attempted to reconcile. The question lies in whether to count the home as marital property subject to equitable distribution or to count it as Philip's separate property. In examining this issue, we look to whether the funds in the credit union account were marital assets; if we so find, then we examine the status of the home as a marital asset.
¶ 6. From the record we find that most or all of Delores's paychecks went into her bank account, and she used these funds to pay personal bills for the couple during the marriage. Most or all of Philip's paychecks went into the credit union account. Both the bank and the credit union accounts were in Philip's and Delores's names. Philip admitted to withdrawing $4,000 in November 1999 from his and Delores's joint credit union account to use as part of a down payment on the home at issue. Philip reasons, though, that since the home was purchased after the separation with funds deposited by him in the account after the separation that the equity *479 in the home could not be considered to be a marital asset subject to equitable distribution. Delores counters that the funds to make the payment on the house were accumulated during the marriage and, thus, were marital assets.
¶ 7. "We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor." Flechas v. Flechas, 791 So.2d 295(¶ 8) (Miss.Ct.App.2001). The "course of the marriage" runs until the date of the divorce judgment, for purposes of calculating whether or not assets are marital or non-marital, and an otherwise marital asset may be classified as separate if an order for separate maintenance is entered. See Godwin v. Godwin, 758 So.2d 384 (¶ 6) (Miss.1999). The supreme court has said that one party's retirement plan is a marital asset if acquired during the marriage. Black v. Black, 741 So.2d 299 (¶ 8) (Miss. Ct.App.1999). We find that the key factor is that funds were acquired during the marriage, thus rendering them marital assets.
¶ 8. Philip and Delores separated in May 1999 and their divorce was not finalized until September 2000. No order for separate maintenance was ever entered. According to Godwin, any property acquired in the interim between the separation and divorce fell into the category of "marital" absent an agreement or evidence to the contrary. Godwin, 758 So.2d at (¶ 6). Monies were deposited in both the bank account and credit union account prior to the divorce; thus, we find them to be marital assets. The chancellor did not abuse his discretion in finding that the home, purchased with money from the credit union account, which was a marital asset, was subject to equitable distribution.

b. Cash assets
¶ 9. Philip argues that the chancellor erred in awarding Delores approximately $50,000, which Philip claims should have been divided equally between the two. Philip cites to Delores's financial statement wherein she notes a certificate of deposit for $45,000 at Lamar Bank and also a balance of $5,800 in her checking account. Delores testified that when she and Philip separated, she took $45,000 out of their joint real estate account and combined this with an income tax check and bought a certificate of deposit for $50,000. Phillip testified that he was aware of the money and he assumed Delores used the money to pay bills, which she testified she used the funds to do. Philip claims the chancellor failed to address these funds in his opinion. However, the chancellor did address these funds in his opinion stating, "Delores has withdrawn jointly owned funds following the separation of the parties used in part to pay necessary expenses." Considering that the chancellor reviewed the parties' testimonies and relevant evidence on this issue at the trial, and recognizing that the chancellor did address the funds in his opinion as cited above, we decline to interfere with the chancellor's decision on this issue.

II. WAS THE CHANCELLOR CLEARLY ERRONEOUS IN AWARDING ALIMONY TO DELORES?
¶ 10. Philip argues that the chancellor committed clear error in awarding alimony to Delores. We look to the chancellor's opinion wherein he made such award:
Based on the length of the marriage, the participation of the parties in accumulating the assets which enabled them to *480 live in the style they chose, the health concerns of Plaintiff and the disparate incomes, Defendant shall pay to plaintiff periodic alimony of $250.00 each month beginning October 1, 2000.
Although the chancellor does not go into specific detail on each and every Armstrong factor used in determining whether to award alimony,[1] his words manifest that he did conduct such analysis based on the facts, which we find to be sufficient. See Anderson v. Anderson, 692 So.2d 65, 71-72 (Miss.1997).
¶ 11. The chancellor was presented substantial evidence at the trial concerning the parties' respective financial situations, plus was given opportunity to view documents revealing expenses and income and other pertinent data.
The award of alimony and the amount of any such award is largely within the discretion of the chancellor. Nonetheless, this Court will reverse an award of alimony on appeal when it is determined to be against the overwhelming weight of the evidence. Where the adequacy or the denial of alimony is at issue, "we will only interfere where the decision is seen to be oppressive, unjust or grossly inadequate so as to evidence an abuse of discretion."
Monroe v. Monroe, 745 So.2d 249 (¶ 13) (Miss.1999) (citations omitted). We find no error in the chancellor's application of the Armstrong factors to the facts of this situation, nor in his award which is not against the weight of the evidence; thus, we affirm.
¶ 12. THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] 1. Income and expenses of the parties; 2. Health and earning capacity of the parties; 3. Needs of each party; 4. Obligations and assets of each party; 5. Length of the marriage; 6. Presence or absence of minor children in the home; 7. Age of the parties; 8. Standard of living of the parties both during the marriage and at the time of the support determination; 9. Tax consequences of the spousal support order; 10. Fault or misconduct; 11. Wasteful dissipation of assets by either party; 12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support. Anderson v. Anderson, 692 So.2d 65, 70 (Miss.1997) (from Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993)).