922 So.2d 24 (2005)
Jo P. Wilson DEAL, Appellant
v.
Joseph L. WILSON, Appellee.
Nos. 2003-CA-02569-COA, 2004-CA-01036.
Court of Appeals of Mississippi.
July 26, 2005.
Rehearing Denied November 8, 2005.
Certiorari Denied February 23, 2006.
*26 Taylor Tucker, attorney for appellant.
Lee D. Thames, Jr., Jackson, attorney for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. This cause was initiated on June 27, 1997, after Joseph L. Wilson ("Jody") filed his complaint for divorce in the Chancery Court of Rankin County against his wife, Jo P. Wilson ("Jo"). On October 22, 2003 the Chancery Court of Rankin County, Mississippi, entered a final judgment setting forth the division of the marital assets of the parties to the action. The chancery court entered an order setting bond on February 6, 2004. Jo now timely appeals the final judgment and the order setting bond. The appeals of both orders are consolidated herein.

FACTS
¶ 2. The final judgment in the underlying action sought to award each party property worth approximately $669,625.27 less adjustments. The court ordered that Jo was to convey a piece of property known as the Fisher Ferry Farm to Jody and pay him the sum of $47,243.77. Jo instituted an appeal of the final judgment and requested that the trial court set the amount of the supersedeas bond. Pursuant to the appeal of the trial court's final judgment, Jo requested that the trial court set the amount of the supersedeas bond to stay the execution of the judgment. On November 19, 2003, the trial court entered an order that allowed a stay of the final judgment pending Jo's ability to post the supersedeas bond. On February 6, 2004, the chancery court entered an order setting bond which set the bond amount at $620,000. Aggrieved by both the final judgment and order setting bond, Jo asserts the following consolidated errors on appeal: (1) whether the trial court erred in awarding the Fisher Ferry Farm to Jody; (2) whether the trial court erred in directing Jo to pay the sum of $47,243.77 to Jody; (3) whether the trial court erred in its determination of the percentage to be used in an equitable division of the property; (4) whether the trial court erred in ruling that the property acquired by Jo subsequent to the date of separation constituted marital property; (5) whether the trail court erred in ruling that the debts incurred by Jo subsequent to the separation were not marital debts; (6) whether the trial court erred in setting the supersedeas bond in the amount of $620,000.

ISSUES AND ANALYSIS

I. Whether the trial court erred in awarding the Fisher Ferry Farm to Jody.
¶ 3. An appellate court will not reverse the decision of a chancellor "unless the chancellor was manifestly wrong, abused his discretion, or applied an erroneous legal standard." Reynolds v. Reynolds, 755 So.2d 467 (¶ 5) (Miss.Ct.App. 1999). Jo. P. Wilson asserts on appeal that the Rankin County Chancery Court erred in ordering her to convey her interest in the Fisher Ferry Farm by deed to Joseph L. Wilson. Two farms, the Bovina Farm and Fisher Ferry Farm, are part of *27 the Wilson's marital assets. The chancellor, after applying the Ferguson factors for the equitable distribution of the property, awarded the Bovina Farm to Jo Wilson and the Fisher Ferry Farm to Joseph L. Wilson. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). Essentially, Jo. P. Wilson argues that the trial court failed to give proper consideration to her emotional attachment to the property, or more specifically, that for various reasons her attachment to the farm was greater than the attachment felt by her husband. In fact, Jo. P. Wilson claimed strong emotional attachments to both farms due to familial ties.
¶ 4. It is clear that the chancellor gave due consideration to the Ferguson factors in distributing the two farms in question. The chancellor specifically noted that while Jo. P. Wilson did entertain some attachment to Fisher Ferry Farm, her family had merely lived near the Fisher Ferry Farm and had moved from the area some twelve years earlier. Furthermore her attachment to the Bovina Farm was the greatest due to the fact that she had made the farm her residence and kept her riding horses there, as well as the fact that her parents lived across the street. Finding that the chancellor applied the correct legal standard and did not abuse his discretion, we affirm the award of the Fisher Ferry Farm.

II. Whether the trial court erred in directing Jo to pay the sum of $47,243.77 to Jody.
¶ 5. Jo next asserts that the method utilized by the trial court to arrive at the $47,243.77 figure she was to pay her ex-husband was flawed. Jo argues that, in its calculations, the trial court improperly reduced Jody's liability by $25,000 for the money that he paid for a private investigator prior to the separation of the couple "as if he paid this from non-marital funds." However, a brief look at the trial court's opinion makes clear that the methodology employed in the distribution of assets was sound.
¶ 6. The chancellor determined that the total marital debt, including the private investigator's fee, a MasterCard debt, and marital home debt totaled $66,208.25. While the chancellor gave Jody credit for the private investigator's fee, he also gave Jo credit for paying the marital home debt to the sum of $ 38,041.00. In each case the chancellor deducted the amounts credited to the respective parties as if, to use Jo's words, the debts were paid from non-marital funds. Curiously, Jo does not challenge the credit that she was given.
¶ 7. The chancellor next divided the marital debt in half for the sum of $33,104.12 before giving Jo credit in the amount of $4,936.87. This credit was computed by subtracting one-half of the marital debt ($33,104.12) from the amount that Jo P. Wilson paid towards the marital home ($38,041). The chancellor next determined that he had awarded the wife, Jo, $53,764.26 over the value of one-half of the marital assets. From this figure he subtracted the $4,936.87 credit that Jo P. Wilson paid in excess of the marital debt, leaving a figure of $48,827.39. From this figure the chancellor subtracted one half of the MasterCard debt ($1,583.62), leaving $47, 243.77 as the figure that Jo P. Wilson was awarded over the value of one-half of the marital assets. Finding no error in the chancellor's computation, we affirm.

III. Whether the trial court erred in its determination of the percentage to be used in an equitable division of the property.
¶ 8. Jo P. Wilson next asserts that the chancellor erred in the application of the Ferguson factors by awarding each *28 party fifty percent of the marital assets. The record reflects that Jo P. Wilson contributed 62.95 percent of the income to the marriage. Jo P. Wilson argues therefore that she should have been awarded 62.95 percent of the marital assets and that Joseph L. Wilson should have been awarded 37.04 percent. Jo P. Wilson further argues that by awarding Joseph L. Wilson fifty percent of the marital assets, the trial court acted out of an improperly punitive motive due to her uncondoned adultery.
¶ 9. It is not clear that the chancellor "became caught up," as Jo asserts, in the fact of Jo's adultery. While adultery was properly considered under the Ferguson guidelines in determining "contribution to the stability and harmony of the marital and family relationship," it is not the only factor that influenced the chancellor's decision. Ferguson, 639 So.2d at 928. The trial court also noted that the spouses both contributed to each other's ability to obtain a medical education, and that the husband increasingly spent his time tending to the two farm properties. It is clear, in fact, that early in the marriage Jody worked to support his wife while she was in school, in essence helping her to achieve the earning potential that led to her later preeminence in the area of earned income. Furthermore, the court noted that the couple engaged in intermingling of account funds, and had no real structure for delineating which party was responsible for the payment of debts. Indeed it seems that debts were paid on a highly ad hoc basis, and that money was used by the couple in a generally "cavalier" manner.
¶ 10. Finally, the mere fact that the wife's adultery mitigated against a pure 63/37 percent split of the couple's earned income does not make the chancellor's decision punitive. If this was the case, in each instance whereby one of the Ferguson factors weighed more heavily towards one spouse than the other, the losing spouse could rationally claim that the decision operated against them in a punitive manner. Such is the nature of divorce. The area of divorce law is necessarily comprised of limited goods, whereby a finite number of assets must be distributed. Therefore, it follows that one party's gain is necessarily reached at the other's loss. Finding no error, we affirm the chancellor's division of assets.

IV. Whether the trial court erred in ruling that the property acquired by Jo subsequent to the date of separation constituted marital property.
¶ 11. Jo next asserts that the chancellor erred in ruling that her post-separation purchases, totaling $124,900, constituted marital property. The general rule for determining what assets are to be considered marital or non-marital has been clear for some time. The determination turns upon whether the asset was obtained during the course of the marriage. "The `course of the marriage' runs until the date of the divorce judgment, for purposes of calculating whether or not assets are marital or non-marital, and an otherwise marital asset may be classified as separate if an order for separate maintenance is entered." McIlwain v. McIlwain, 815 So.2d 476, 479 (¶ 7) (Miss.Ct.App.2002) (citing Godwin v. Godwin, 758 So.2d 384 (¶ 6) (Miss.1999)). Prior to the divorce, no separate maintenance order was entered. However, Jo argues that the purchases that she made prior to the divorce, as well as the loans she took out for her horse trailer and F-350 pickup truck, all flowed from her separate checking accounts. The purchase prices of the horse trailer and truck were $52,000 and $44,900 respectively. Jo contends that if an asset was purchased with funds from the separate estate of one of the parties, it should not presumed *29 to be marital assets. Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994).
¶ 12. Jo reported that her pre-divorce checking account balance totaled $3,400. It is inconceivable that she could have paid for the items in question from this account, or borrowed sufficient sums of money against it. It is apparent that any loans secured by Jo P. Wilson could only have been secured through the use of marital property as collateral, therefore the property in question was properly considered marital in nature. Furthermore, the chancellor specifically noted that no compelling evidence was presented at the hearing that either party had separate estates prior to the divorce. Finding no error, we affirm the trial court's inclusion of the challenged assets as marital property.

V. Whether the trial court erred in ruling that the debts incurred by Jo subsequent to the separation were not marital debts.
¶ 13. Jo P. Wilson asserts, without benefit of accompanying precedent, that three items listed on the pre-trial order should have been considered marital debt. The items are a Trustmark Bank loan in the amount of $7,500, a loan from Jo's father in the amount of $6,000, and a MasterCard Platinum Plus credit debt in the amount of $5,332.49. Jo argues that the Trustmark loan was used to purchase the F-350 truck and that the other loans were used to purchase other post-separation items. As such, she argues that the debt incurred on any assets should be considered marital so long as the assets themselves are also considered marital property. Coincidently, according to Jo P. Wilson's prior arguments, she would presumably have this Court rule that the questioned assets are not marital property, while the debt for the articles is marital in nature.
¶ 14. It is apparent that the items listed above, specifically the MasterCard debt, were considered marital debt, the burden of payment of such debts which were split evenly between the Wilsons. Therefore this assignment of error is without merit.

VI. Whether the trial court erred in setting the supersedeas bond in the amount of $620,000.
¶ 15. We review questions of law, such as the determination of the amount in controversy on appeal, de novo. Mason v. State, 781 So.2d 99, 100 (¶ 9) (Miss.2000). Jo P. Wilson asserts on appeal that the trial court erred in setting the amount of the supersedeas bond at $620,000. The chancellor arrived at the above figure by first determining that the total amount of property awarded to Jo by the final judgment was $833,989.53. From this amount the chancellor deducted Bovina Farm, awarded to Jo, at a value of $76,000, and the Fisher Ferry Farm, which he ordered Jo to convey to Jody, at a value of $128,000. The subtraction of the value of the real property assets left the chancellor with a final value of $629,989.53. Somewhat inexplicably, based upon this final value the chancellor set the supersedeas bond at $620,000.
¶ 16. A procurement of a supersedeas bond is the means by which an unsuccessful litigant seeks a stay of the execution of a judgment appealed from. In re Estate of Taylor, 539 So.2d 1029, 1031 (Miss.1989). The general purpose of such a bond is to effect the absolute security of the party affected by the appeal. Id. at 1031. "The amount of a supersedeas bond should be sufficient to protect the appellee in his judgment; therefore, it should insure the payment of the judgment and interest, and any waste that could occur pending the appeal." Id.
*30 ¶ 17. The controlling guideline for the determination of the form, amount, and procedure for supersedeas bonds is Rule 8 of the Mississippi Rules of Appellate Procedure. Id. at 1032. Rule 8 sets forth the guidelines for determining the proper supersedeas bond when dealing with a money judgment or judgment based on personal or real property. In the case at hand, the trial court's final judgment awarded Jody both a cash and real property award. Rule 8(a) applies to money judgments, while Rule 8(b) applies to other than money judgments. Rule 8 sets forth in pertinent part as follows:
"(a) The appellant shall be entitled to a stay of execution of a money judgment pending appeal if the appellant gives a supersedeas bond, payable to the opposite party ... in a penalty of 125 percent of the amount of the judgment appealed from....
(b)(1) ... The court shall require the giving of security by the appellant in such form and in such sum as the court deems proper, and for good cause shown may set the supersedeas bond in an amount less than the 125 percent required in cases under Rule 8(a).
(b)(5).... If a hearing is necessary for issues arising under subpart (b), the judgment shall be stayed during such hearing and for ten days following the trial court's ruling...."
¶ 18. The chancellor clearly erred in determining the final figure for the supersedeas bond. The chancellor should have multiplied $47,243.77, the amount of the money judgment appealed from, by 125 percent, as required by Rule 8(a). In short, the supersedeas bond should have been set at $59,054.72 for the money judgment portion of the appealed award. The real property portion of the award, namely the Fisher Ferry Farm, requires more analysis in order to determine the proper bond amount. Mississippi Code. Annotated § 11-51-39 (1972) provides that in instances dealing with real estate, "bond shall be conditioned to pay all damage, and not to commit or suffer to be committed any waste thereon, and to pay the value of the use and occupation thereof until the delivery of possession."
¶ 19. Fisher Ferry Farm is valued at approximately $128,000. The chancellor at trial specifically concluded that sufficient safeguards existed in order to prevent the conveyance of the farm to any potential third party. Therefore, for the purposes of determining the supersedeas bond, the chancellor should have created the bond by means of the considerations enumerated in Mississippi Code. Annotated § 11-51-39. For additional help in determining the appropriate supersedeas bond, the chancellor may look to the comment of Rule 8, which states as follows:
When the judgment is not a money judgment, the court may, but is not required to, follow the practice of statutes supplanted by this rule, e.g., now repealed Miss.Code. Ann. § 11-51-35 (Supp.1986) (double one year's rent to stay a writ of possession in ejectment); § 11-51-39 (Supp.1986) (double value of real estate to be surrendered); now-repealed § 11-51-41 (1972) (double value of real estate or charges on real estate).
¶ 20. The trial court clearly erred in setting the supersedeas bond at $620,000, and therefore, we must reverse. Should the appellant decide to seek certiorari to the Mississippi Supreme Court, we must remand this error with two instructions. First, that the supersedeas for the money portion of the challenged award be set at $59,054.72. Second, the trial court should add to the above figure the supersedeas value of the Fisher Ferry Farm, to be *31 determined in accordance with the guidelines of this opinion.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY OF DIVISION OF PROPERTY IS AFFIRMED. THE SETTING OF SUPERSEDEAS BOND IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THE TERMS OF THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR.