*452
 
 ROBERTS, J.,
 

 for the Court.
 

 ¶ 1. This is the second appeal before this Court in this divorce action. William (Bill) Striebeck and Ruth Ann Provenza Strie-beck were married in August 1991. Bill is an attorney in private practice. Ruth Ann is an educator employed by the Greenville School District; she also works part time at a community college. They were granted a divorce by the Washington County Chancery Court in November 2003. Both parties appealed the monetary aspects of the judgment. The provisions of the first chancery court order that are pertinent to this second appeal required Bill to pay Ruth Ann $34,055 in equitable distribution for her half of the equity in the marital home, and $750 per month in periodic alimony.
 

 ¶ 2. In 2005, we reversed and remanded with instructions that the chancery court should: (1) valúate Ruth Ann’s interest in a family trust/partnership and determine whether this interest was marital or non-marital property; (2) valúate the amount of attorney’s fees earned by Bill in several cases referred to as “the Bridge Matter” and determine if these were marital or non-marital assets; (3) analyze the marital assets and equitably divide them; and (4) after equitable distribution and taking into account the financial needs of each party, determine the amount, if any, of permanent alimony warranted.
 
 Striebeck v. Striebeck,
 
 911 So.2d 628, 634-35 (¶¶ 20-26) (Miss.Ct.App.2005).
 

 ¶ 3. A different chancellor was appointed on remand by the supreme court. On November 29, 2006, the newly appointed chancellor held a hearing, at which additional testimony and documentary evidence concerning the parties’ financial situations were introduced. In the chancellor’s judgment, she placed a current value of $611,087.21 on Ruth Ann’s interest in the family trust/partnership and classified this property as non-marital. The chancellor calculated the amount of attorney’s fees earned by Bill in the Bridge Matter to be $360,616.41 and classified this property as marital. The chancellor awarded Ruth Ann $75,000 of the $360,616.41 in equitable distribution of the marital estate. The chancellor also found that no alimony was warranted in light of the equitable division of the marital estate, Ruth Ann’s earning ability, and Ruth Ann’s non-marital property, as well as Bill’s previous payment to Ruth Ann of $34,055 for her share of the equity in the marital home.
 

 ¶ 4. Bill appeals and asserts three errors: (1) the chancellor erred in equitably dividing the marital property by awarding Ruth Ann an interest of Bill’s attorney’s fees earned in the Bridge Matter; (2) the chancellor erred in changing the finding by the original chancellor that Ruth Ann rendered little assistance to Bill in his law practice; and (3) the chancellor ex-red in not granting Bill’s motion to reimburse him for the alimony paid “after the Court of Appeals reversed an erroneous grant of the alimony by the original trial court.” We address the first two issues in one analysis, because they both pertain to the chancellor’s decision that Ruth Ann was entitled to $75,000 as equitable distribution. The last issue pertains to whether Bill is entitled to some relief after paying $28,500 in periodic alimony during the pen-dency of the first appeal and the judgment on remand that found no periodic alimony was wai-ranted. Finding no error, we affirm.
 

 DISCUSSION
 

 I. EQUITABLE DISTRIBUTION.
 

 II. RUTH ANN’S ASSISTANCE IN BILL’S LAW PRACTICE.
 

 
 *453
 
 ¶5. These two issues are argued simultaneously in the briefs. Essentially, Bill’s argument is that because the parties separated in 2000, and Ruth Ann’s contribution to his law practice occurred in the early years of the marriage before he entered into the contracts yielding the Bridge Matter attorney’s fees, it was “inequitable” to distribute any part of them to Ruth Ann. However, there is no doubt that Bill performed the legal work earning the attorney’s fees during the time of the marriage. While Bill does not appear to argue that the chancellor erred in applying the
 
 Ferguson
 
 factors, we will briefly address that issue.
 

 ¶ 6. “When this Court reviews a chancellor’s decision in a case involving divorce and all related issues, our scope of review is limited by the substantial evidence/manifest error rule.”
 
 Yelverton v. Yelverton,
 
 961 So.2d 19, 24(¶ 6) (Miss. 2007). Therefore, we will “not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous standard was applied.”
 
 R.K v. J.K.,
 
 946 So.2d 764, 773(¶ 17) (Miss. 2007). Marital property includes “any and all property acquired or accumulated during the marriage.”
 
 Owen v. Oiven,
 
 928 So.2d 156, 160(¶ 12) (Miss.2006) (quoting
 
 Hemsley v. Hemsley,
 
 639 So.2d 909, 915 (Miss.1994)). The supreme court identified eight factors for chancery courts to consider in equitable distribution analysis: (1) substantial contribution to the accumulation of the property; (2) disposal of marital property; (3) prior distribution of assets; (4) market and emotional value of the assets; (5) the value of property brought into the marriage; (6) tax consequences; (7) eliminating friction between the parties; and (8) the needs of the parties to financial security regarding the combination of assets, income, and earning capacity.
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994). The chancellor rendered findings for each of the
 
 Ferguson
 
 factors.
 

 (1) Substantial contribution to the accumulation of the property.
 

 ¶ 7. The chancellor found that both parties contributed to the accumulation of marital property. Although Bill and Ruth Ann did not live together while Bill was earning the Bridge Matter fees, in the early years of the marriage, Ruth Ann assumed part of Bill’s student loans from law school when they refinanced their home, gave Bill $15,000 for his law office building, and assisted in answering Bill’s office phone. Moreover, the chancellor found that during the “lean years” of Bill’s early practice, Ruth Ann worked two jobs and contributed to joint accounts for family living expenses.
 

 (2) Disposal of marital property.
 

 ¶ 8. The chancellor found neither party disposed of marital property.
 

 (3) Prior distribution of assets.
 

 ¶ 9. The chancellor found that the first trial had resulted in Bill paying Ruth Ann $34,055 for half the equity of the marital home.
 

 (4) Market and emotional value of assets.
 

 ¶ 10. The chancellor found this factor did not apply.
 

 (5) The value of property brought into the marriage.
 

 ¶ 11. This has been an issue on remand, and the chancellor valued Ruth Ann’s family trust/partnership at $611,087.21. The chancellor further found Bill’s individual net worth was $60,166.96 and Ruth Ann’s individual net worth was $793,876.08.
 

 
 *454
 
 (6) Tax consequences.
 

 ¶ 12. The chancellor found no evidence going to these. Bill contends there were tax consequences involved in the equitable distribution of assets, but he does not assign any error.
 

 (7) Eliminating friction between the parties.
 

 ¶ 13. The chancellor found there was obvious friction, and periodic payments should be avoided.
 

 (8) The needs of the parties to financial security regarding the combination of assets, income, and earning capacity.
 

 ¶ 14. The chancellor found both parties were employed. And, although Bill’s monthly salary was slightly higher than Ruth Ann’s salary, Ruth Ann could request funds from the family trust/partnership if needed.
 

 ¶ 15. The substance of Bill’s argument is that the chancellor erred in the equitable distribution of marital property because he and Ruth Ann separated before he commenced working on the Bridge Matter, and Ruth Ann’s net worth far exceeds his own. However, there is no doubt that the fees from the Bridge Matter were marital property, and Ruth Ann materially assisted him in building his practice earlier in the marriage. The record shows that there was no property division or temporary support order entered prior to Bill receiving the attorney’s fees. Further, pursuant to the division of the Bridge Matter fees, the chancellor awarded Bill $288,616 — nearly five times that awarded to Ruth Ann. Equitable distribution does not require an equality in the separate estates.
 
 Owen v. Owen,
 
 798 So.2d 394, 399(¶ 14) (Miss.2001). Based on this record, there is no abuse of discretion, and this issue is without merit.
 

 III. REIMBURSEMENT FOR ALIMONY PAID.
 

 ¶ 16. The initial chancery court judgment in this case required Bill to pay $750 per month in periodic alimony. The record shows he paid $28,500.
 

 ¶ 17. In our first opinion in this matter, we reversed and remanded with instructions for the chancellor to consider whether any alimony was warranted after determining the parties’ non-marital estates and equitably distributing marital property. Upon remand, Bill filed a motion with the chancery court for restitution of the alimony he had paid. The chancellor did not issue an order specifically determining the merits of Bill’s motion for restitution. However, in the opinion at issue in this appeal, the chancellor specifically found that Bill should be credited with the amount of alimony he paid pursuant to the initial divorce decree when he paid the $75,000 in equitable distribution to Ruth Ann. Thus, Bill has actually prevailed on the issue of the periodic alimony he paid. What really is at issue in this assignment of error is that Bill sought to have Ruth Ann’s equitable distribution award of $75,000 entirely reversed in issues I and II. And then, in issue III, he sought to recoup the $28,500 as well. We do not mean to imply that Bill has done anything but take his right of appeal and offer good faith arguments as to why he should prevail on both issues of equitable distribution as well as alimony. However, the framing of the issues can be confusing because the credit for the $28,500 paid in alimony is entangled in both issues.
 

 ¶ 18. In his brief before this Court, Bill contends that his motion for restitution was “denied by implication.” We disagree. It is clear from the record he prevailed on this issue. In order to appeal an issue, a party must have been
 
 *455
 
 aggrieved by the judgment.
 
 See, e.g., Dunn v. Dunn,
 
 853 So.2d 1150, 1152 (¶¶ 3-6) (Miss.2003). As such, Bill lacks standing to assert this issue.
 

 ¶ 19. Moreover, even assuming there was standing (which we do not find), Bill frames this issue as one of first impression: whether “a paying spouse should be restored to the position occupied prior to the rendition of an erroneous grant of alimony in a divorce judgment.” This characterization is not what occurred in this case. This Court did not reverse and render the alimony award in the first divorce judgment. Instead, we reversed and remanded to address the issue of alimony after equitable distribution determined the respective financial positions of the parties.
 
 Striebeck,
 
 911 So.2d at 635(¶ 26). The initial award of alimony was not unjustified in light of the fact that Bill retained possession of the marital home while Ruth Ann and the couple’s minor daughter were living in Ruth Ann’s mother’s home. The effect of the equitable distribution on remand is that Ruth Ann retained the $34,055 from her share of the marital residence’s equity. She also was awarded $75,000 in equitable distribution. From that amount, the chancellor found Bill should be credited with the $28,500 he had previously paid in alimony. Thus, Ruth Ann ultimately was awarded $34,055 for the equity in the marital home, and $46,000. Rather than being an issue of first impression, this issue is one of “the law of the case” with a trial court effectuating the holding of an appellate court.
 
 See, e.g., Paracelsus Health Care Corp. v. Willard,
 
 754 So.2d 437, 440(¶9) (Miss. 1999). There is no merit to this assignment of error.
 

 ¶ 20. THE JUDGMENT OF THE WASHINGTON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ, CONCUR. KING, C. J., NOT PARTICIPATING.