## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00380-SCT

*BARBARA ANN GODWIN*

*v.*

*WILLIAM HERMAN GODWIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/97 |
| TRIAL JUDGE: | HON. TIMOTHY E. ERVIN |
| COURT FROM WHICH APPEALED: | LEE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JEANINE M. CARAFELLO |
| | RANDY A. CLARK |
| ATTORNEY FOR APPELLEE: | PHILLIP L. TUTOR |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART, REVERSED AND REMANDED IN PART - 6/10/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/1/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE FACTS AND CASE

¶1. Barbara and William ("Bill") Godwin were married in Alcorn County on February 2, 1957. Two children were born of the marriage, and Barbara assumed the duties of mother and housewife, raising the children to maturity. At times, the couple endured serious financial difficulties, particularly following the collapse of Bill's car business in 1979. Following this setback, Bill found employment with the Okolona branch of the People's Bank and Trust Company, and Barbara also found employment at a motel where the couple had been living.

¶2. During this period of financial recovery, Bill began an adulterous affair with Ann Godfrey. Barbara feared that Bill planned to leave her, and, in June 1987 she withdrew approximately $ 8,000.00 from the couple's joint savings account. An argument ensued, and Bill left the marital premises and began co-habiting with Godfrey. Barbara filed a Complaint for Separate Maintenance and Other Relief on June 9, 1987, and,

for the next seven years, Bill paid Barbara $ 556.00 or more per month in separate maintenance.

¶3. In June of 1994, Bill filed a motion for a reduction in his separate maintenance payments, due to the fact that Barbara had gained employment at the North Mississippi Medical Center. Bill also sought relief from a judicial lien which had previously been ordered by the Chancellor. In response, Barbara filed a number of motions and responsive pleadings, culminating in a Complaint for Divorce and Other Relief which she filed on October 13, 1995. Bill filed an answer in which he admitted adultery and asked that the couple's property be equitably divided. The Chancellor granted the divorce and equitably divided of the couple's property. He did not award Barbara alimony. Feeling aggrieved, Barbara appealed to listing the following four assignments of error:

**I. THE CHANCELLOR'S REFUSAL TO GRANT BARBARA GODWIN AN EQUITABLE INTEREST IN MR. GODWIN'S EXECUTIVE DEFERRED COMPENSATION PLAN IS IN CONTRAVENTION TO THE PREVAILING CASE LAW AND SHOULD BE RE-EXAMINED ON REMAND.**

**II. THE CHANCELLOR'S FAILURE TO AWARD BARBARA GODWIN PERIODIC OR LUMP SUM ALIMONY CONSTITUTES AN ABUSE OF DISCRETION.**

**III. BARBARA GODWIN SHOULD HAVE BEEN AWARDED SUPPLEMENTAL INSURANCE COVERAGE OR, IN THE ALTERNATIVE, MONEY TO PURCHASE ADDITIONAL COVERAGE.**

**IV. DUE TO THE LACK OF ANY MATERIAL CASH AWARD, BARBARA GODWIN SHOULD HAVE BEEN AWARDED ATTORNEY'S FEES. THE CHANCELLOR'S FAILURE TO PROPERLY EVALUATE HER FINANCES AT THE TIME OF THE TRIAL IN THIS REGARD IS CLEARLY ERRONEOUS.**

### DISCUSSION OF LAW

**I. THE CHANCELLOR'S REFUSAL TO GRANT BARBARA GODWIN AN EQUITABLE INTEREST IN MR. GODWIN'S EXECUTIVE DEFERRED COMPENSATION PLAN IS IN CONTRAVENTION TO THE PREVAILING CASE LAW AND SHOULD BE RE-EXAMINED ON REMAND.**

¶4. Barbara argues the Chancellor improperly failed to consider awarding her a share of the contents of Bill's Executive Deferred Compensation Plan pursuant to *Ferguson v. Ferguson,* 639 So. 2d 921 (Miss. 1994). An analysis of the Chancellor's findings of fact and conclusions of law indicates the Chancellor refused to award Barbara an interest in the Deferred Compensation Plan based, at least in part, on the conclusion that the contents of this retirement fund did not constitute marital property subject to equitable division. The Chancellor's ruling reflects a clear pattern: the ruling evenly divides the property the couple acquired prior to the 1987 separation, but the ruling permits each party to keep the property they acquired following the separation. Indeed, the Chancellor expressly makes a distinction between the properties acquired before and after the 1987 separation in his ruling. With regard to the property acquired before the separation, the Chancellor ruled as follows:

1) That the parties hereto have been physically separated since 1987 and that a Decree for Separate Maintenance was rendered by this Court on December 11, 1987.

2) That at the time of the separation. . . the parties had or had begun to accumulate the following assets. (Assets omitted). . . .

3) That the above assets are joint marital assets and that the fair and equitable division of each of those assets, other than the personal effects and household goods is that they should have been divided equally to either party.

With regard to the property acquired after the separation, the Chancellor ruled as follows:

6) That the equity in the home. . . which was acquired by the Defendant after 1987 shall be the property of the Defendant or Ann Godfrey;

7) That the 1981 van owned by the Defendant and the People's Bank & Trust Company Executive Deferred Compensation Plan acquired by the Defendant since 1987 *shall remain his exclusive property.* (emphasis added).

¶5. The Chancellor's ruling thus describes the Deferred Compensation Plan, acquired by Bill after 1987, as his "exclusive property," while the ruling characterizes the properties acquired by the couple prior to 1987 as "joint marital assets." The ruling thus treats the Godwin's 1987 separation as the cut-off date for determining whether property acquired constitutes marital or separate property.

¶6. It is true, of course, that neither the Legislature nor this Court has ever recognized the concept of a "legal separation" in this State's divorce law, and we do not do so in this case. However, an order for separate maintenance is recognized and is viable. Under the circumstances of this case, the order creates a point of demarcation with respect to the parties and their estates.

¶7. Assets acquired after an order for separate maintenance should be considered the separate property of the parties, absent a showing of either (1) contribution to the acquisition of the asset by the other spouse as contemplated in our decisions in *Ferguson v. Ferguson*, 639 So. 2d 921, 928-29 (Miss. 1994), and *Magee v. Magee*, 661 So. 2d 1117, 1123 (Miss. 1995) or, (2) acquisition of the asset through the use of marital property.[(1)]

¶8. There is no evidence in the record that suggests Barbara contributed to Bill's Deferred Compensation Plan with the People's Bank and Trust Company. Bill started contributing to this plan from his income several years after the 1987 order for separate maintenance. The Chancellor did not abuse his discretion in finding this asset was Bill's separate property. This assignment has no merit.

### II. THE CHANCELLOR'S FAILURE TO AWARD BARBARA GODWIN PERIODIC OR LUMP SUM ALIMONY CONSTITUTES AN ABUSE OF DISCRETION.

¶9. After an equitable division of martial property, the final step the chancellor must complete is a consideration of the need, if any, for alimony. *Johnson v. Johnson*, 650 So. 2d 1281, 1287 (Miss.1994). In awarding alimony, the chancellor is to consider the twelve factors listed in *Armstrong v. Armstrong*, 618 So. 2d 1278 (Miss. 1993):

1. The income and expenses of the parties;

2. The health and earning capacities of the parties;

3. The needs of each party;

4, The obligations and assets of each party;

5. The length of the marriage;

6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;

7. The age of the parties;

8. The standard of living of the parties both during the marriage and at the time of the support determination;

9. The tax consequences of the spousal support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party; or

12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Armstrong*, 618 So. 2d at1280.

¶10. Since our decisions in *Armstrong* and in *Ferguson v. Ferguson*, 639 So. 2d 921 (Miss. 1994), we have instructed chancellors to make on the record findings showing consideration of the applicable factors for equitable distribution of marital property and the applicable factors necessary for determining whether an award of alimony is warranted in a particular case. *See, e.g.*, *Turpin v. Turpin*, 699 So. 2d 560, 565 (Miss. 1997) ("To aid appellate review, findings of fact by the chancellor, together with the legal conclusions drawn from those findings, are required.").

¶11. While we have not reversed and remanded in every case where an individual chancellor has failed to complete a proper *Armstrong* or *Ferguson* analysis, we have noted the difficulties such a case presents for this Court. Justice Banks, writing for the Court, addressed this topic recently in *Selman v. Selman*, 722 So. 2d 547 (Miss. 1998).

This Court stated in *Ferguson* that "[t]o aid appellate review, findings of fact by the chancellor, together with the legal conclusions drawn from those findings, are required." *Ferguson*, 639 So. 2d at 929. The chancellor's findings in the present case could have better equipped this Court to review the disputed issues. However, this Court will reverse and remand only where the failure to make sufficient findings of fact and conclusions of law constitute manifest error. *Sandlin v. Sandlin*, 699 So. 2d 1198, 1204 (Miss.1997).

*Selman*, 722 So. 2d at 554. In *Selman*, even though the chancellor's findings of fact were not complete, based upon other information in the record, we were able to complete a proper appellate review of the decision below. Unfortunately, in the case *sub judice* we cannot.

¶12. For seven years beginning in 1987, Bill paid Barbara $556.00 per month in separate maintenance.

Nowhere in the chancellor's findings of fact and conclusions of law does he address the termination of the separate maintenance payments and its effect on the parties' positions after the divorce. Under the unique facts of this case, such a failure constitutes an abuse of discretion. It may well be that the chancellor was correct in finding that neither periodic nor lump sum alimony is warranted in this case, however, based on the record before us and the failure of the chancellor to include a complete *Armstrong* analysis, we are unable to make that determination. For this reason, we reverse and remand this case for reconsideration of alimony consistent with the principles in this opinion.

### III. BARBARA GODWIN SHOULD HAVE BEEN AWARDED SUPPLEMENTAL INSURANCE COVERAGE OR, IN THE ALTERNATIVE, MONEY TO PURCHASE ADDITIONAL COVERAGE.

¶13. Barbara argues the Chancellor erred in failing to require Bill to supplement the health insurance she currently carries through her employer. Barbara notes her current policy only covers 80 % of her hospitalization and requires her to pay for her own prescription drugs. The Chancellor correctly found Barbara carries health insurance coverage through her employer, and nothing in this State's jurisprudence requires Bill to provide Barbara with supplemental coverage to cover all medical contingencies. This point of error is without merit.

### IV. DUE TO THE LACK OF ANY MATERIAL CASH AWARD, BARBARA GODWIN SHOULD HAVE BEEN AWARDED ATTORNEY'S FEES. THE CHANCELLOR'S FAILURE TO PROPERLY EVALUATE HER FINANCES AT THE TIME OF THE TRIAL IN THIS REGARD IS CLEARLY ERRONEOUS.

¶14. Barbara argues the Chancellor erred in refusing to award her attorneys fees. This Court recently stated in *Sarver v. Sarver*, 687 So. 2d 749 (Miss. 1997),

> The question of attorney fees in a divorce action is a matter largely entrusted to the sound discretion of the trial court. . . . "If a party is financially able to pay her attorney, an award of attorney's fees is not appropriate."

*Sarver*, 687 So. 2d at 755 (quoting *Martin v. Martin*, 566 So. 2d 704, 707 (Miss. 1990)). The Chancellor found Barbara possessed adequate assets from which to pay her attorney's fees. This point of error is without merit.

### CONCLUSION

¶15. The chancellor's use of the 1987 separate maintenance agreement as a point of separation in his equitable distribution of the Godwin's marital property was appropriate. However, the chancellor's failure to address the termination of the separate maintenance payments in the record and his failure to include a complete *Armstrong* analysis requires this Court to reverse the judgment below in part on the issue of alimony and to remand this case for a reconsideration of alimony in light of the principles discussed in this opinion. In all other respects, the judgment below is affirmed.

¶16. **AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

**SULLIVAN, P.J., BANKS, SMITH AND MILLS, JJ., CONCUR. PRATHER, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY**

**COBB, J. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., AS TO PART I. PITTMAN, P.J., NOT PARTICIPATING,**

## PRATHER, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶17. I respectfully dissent to the portion of the majority's opinion which establishes a presumption that property acquired following an award of separate maintenance constitutes non-marital property. In the legal treatise *Valuation and Distribution of Marital Property*, § 3.03(3) (1994 ed.), Ann Oldfather et al. note that there is a split in nationwide authority with regard to the issue of whether or not property acquired after a legal separation constitutes marital property subject to equitable distribution. It is apparent, however, that, in the vast majority of the jurisdictions which consider property acquired after separation to constitute separate property, there are statutes in effect which specifically so provide. See, e.g., Colo. Rev. Stat. § 14-10-113(5), Ky. Rev. Stat. Ann. § 403.190(2).

¶18. In Mississippi, by contrast, the divorce statutes do not even recognize the concept of a legal separation, and there is accordingly no statutory basis for the majority's holding in the present case. See N. Shelton Hand, Jr., *Divorce, Alimony, and Child Custody*, § 2-7 (5th Ed. 1998). (Mississippi law does not recognize the concept of legal separation). This Court has defined marital property as "any and all property acquired or accumulated during the marriage," and it is clear that Bill acquired the pension fund in question during his marriage with Barbara. See *Hemsley v. Hemsley*, 639 So.2d 909 (Miss. 1994), see also *Johnson v. Johnson*, 650 So.2d 1281 (Miss. 1994).

¶19. Persuasive authority supports this Court's conclusion in this regard. In *Centazzo v. Centazzo*, 509 A.2d 995 (R.I. 1986), the Supreme Court of Rhode Island held that:

> Because of the fact that the marital relationship remains in force until dissolved by a final decree and because property acquired after a petition for divorce is filed or property acquired after one spouse leaves the marital home is not specifically excluded by statute, such property is subject to equitable distribution.

*Centazzo*, 509 A.2d at 997. In *Nuse v. Nuse*, 601 A.2d 985 (Vt. 1991), the Supreme Court of Vermont similarly held that:

> Appellant also complains about the inclusion of the house in the marital assets because it was acquired after the parties separated and about the failure of the court to subtract the outstanding indebtedness to his mother from the value of the house. The applicable statute requires division of marital property "however and whenever acquired" and is broad enough to cover property acquired after the parties separated.

*Nuse*, 601 A.2d at 986.

¶20. This Court has held that the contents of a retirement fund constitute marital property subject to equitable distribution. *Magee v. Magee*, 661 So.2d 1117 (Miss. 1997). This Court has also noted that a Chancellor is not, as a matter of law, required to divide the contents of a retirement fund equally. ***Love v. Love***, 687 So.2d 1229 (Miss. 1997). It is clear, however, that, in the present case, the Chancellor did not engage in a proper legal analysis with regard to the Deferred Compensation Plan, due to his erroneous conclusion that the contents of the plan constituted Bill's separate property.

¶21. This is not to say, of course, that the existence of a separation should be irrelevant for the purposes of dividing property under *Ferguson*. To the extent that the facts surrounding a separation are relevant to the *Ferguson* factors, then these facts should be considered by the Chancellor. It is my view, however, that the Chancellor erred in ruling that property acquired after separation constituted Bill's separate property as a matter of law. I would remand for a determination of what interest, if any, in Bill's pension fund should be equitably distributed to Barbara pursuant to *Ferguson*, and I must accordingly dissent.

**COBB, J., JOINS THIS OPINION.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶22. Separate maintenance is not "legal separation." Mississippi has never recognized legal separation. *See* N. Shelton Hand, Jr., **Mississippi Divorce, Alimony, and Child Custody**, § 2-7, at 26 (5th ed. 1998). Separate maintenance is maintenance while the recalcitrant spouse is living apart from the aggrieved spouse. In fact, "[i]t is well-established that '[a] decree for separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other.'" *See Daigle v. Daigle*, 626 So. 2d 140, 145 (Miss. 1993) (*quoting Lynch v. Lynch*, 616 So. 2d 294, 296 (Miss. 1993)). By stating in Issue I that separate maintenance "creates a point of demarcation" in the sense of a legal separation, the majority effectively precludes the purpose of separate maintenance as a continuation of the marriage and thereby destroys the idea of reunification. Hence, while I concur with Issues III & IV, I dissent as to Issue I and, because alimony is related to the question of equitable distribution, I do not agree with Issue II.

¶23. Under a separate maintenance scheme, the parties involved remain husband and wife. Nonetheless, divorce or reconciliation may eventually be sought. The majority now uses the date separate maintenance was ordered as a line of demarcation to penalize a person who is forced to seek redress in the form of such maintenance. The majority rewards the recalcitrant spouse by giving him assets acquired after the effective date of the separate maintenance despite the fact that the parties were still married subsequent to the order of separate maintenance. The assets are marital property subject to equitable distribution. *See Hemsley v. Hemsley*, 639 So. 2d 909, 915 (Miss. 1994). Yet, the majority deems such assets separate property, thereby precluding Barbara from their benefit. If this Court is to be true to its equitable distribution jurisprudence as presented in the seminal case of *Hemsley*, the day of separation under a separate

maintenance scheme should not apply. In *Hemsley*, we used the time up to the divorce trial to determine assets. *See id.* at 911 & 913-15. Today, the Court expressly creates an inconsistency. According to the majority, all assets acquired during a marriage are marital property subject to equitable distribution, unless the parties are under a separate maintenance scheme. Such is unreasoned because the parties are still married when separate maintenance is at issue. Were the situation otherwise, the parties would be divorced. Lest we forget, Mississippi does not recognize legal separation as non-divorce equivalent to the severance of the household effected by a divorce. By acting as it does, the majority is creating legal separation, which the majority admits the Legislature has heretofore not authorized.

¶24. We have always used up to the time of the divorce trial to divide assets, not the date separate maintenance was ordered. Are we now to use the date of separation regardless of whether there is a separate maintenance order or the parties just separated to divide the marital assets? Today the Court is inconsistent and creates confusion and uncertainty for all parties contemplating some form of severance of marital ties. The majority penalizes the spouse who seeks support when the recalcitrant spouse does not want to give the more innocent spouse funds upon which to live. Further, I disagree with the majority's disposition of Issue II in that alimony is not an issue when the case is one of separate maintenance. Equitable distribution is the issue. I concur as to Issues III and IV.

¶25. Hence, I concur in part and dissent in part.

**PRATHER, C.J., JOINS THIS OPINION IN PART AS TO ISSUE I.**

1. Here we are referring to the use of marital property, such as cash or some other like asset, to purchase property or the use of marital property as collateral or security for the purchase of property.