¶ 59. I concur with the majority that the chancellor did not abuse his discretion in dividing the marital home equally, and I concur in the majority's decision to reverse and remand for equitable division the issue of the husband's three pension and retirement plans, which the chancellor improperly failed to classify as marital property. I also concur with the majority's resolution on the matters of equitable division of the antique furniture and china, silver, and jewelry, the trusts with Mrs. Pittman as income beneficiary, child support and security, tax exemptions, periodic alimony, and Mrs. Pittman's miscellaneous debts. I dissent, however, to the majority's expansion of the Godwin doctrine concerning separate maintenance, as well as to the majority's classification of the children's education trusts, to findings concerning interest in Mr. Pittman's business *Page 872 
and to the decision to reverse the award of attorney's fees to Mrs. Pittman.
¶ 60. First, concerning Godwin, the majority finds "that the temporary support order [serves] the same analytical purposes as a separate maintenance order and that property accumulated thereafter is separate property." I do not read Godwin v. Godwin, 758 So.2d 384 (Miss. 1999), to grant such expansion. In Godwin, the wife filed a complaint for separate maintenance, which the court granted. Godwin, 758 So.2d at (¶ 2). The complaint for divorce came eight years later. In the interim period between the entry of the separate maintenance agreement and the divorce order, the husband's retirement fund increased in value. Concerning equitable distribution, the question arose whether or not the value of the retirement fund should be calculated from the date of the separate maintenance order or from the date of the judgment of divorce.Id. at (¶ 4). The court found:
 It is true, of course, that neither the Legislature nor this Court has ever recognized the concept of a "legal separation" in this State's divorce law, and we do not do so in this case. However, an order for separate maintenance is recognized and is viable. Under the circumstances of this case, the order creates a point of demarcation with respect to the parties and their estates.
 Assets acquired after an order for separate maintenance should be considered the separate property of the parties, absent a showing of either (1) contribution to the acquisition of the asset by the other spouse as contemplated in our decisions in Ferguson v. Ferguson, 639 So.2d 921, 928-29 (Miss. 1994), and Magee v. Magee, 661 So.2d 1117, 1123 (Miss. 1995) or, (2) acquisition of the asset through the use of marital property.
Id. at (¶¶ 6-7). In the present case, a separate maintenance agreement was not entered, but an order for temporary support was entered. The two concepts are clearly not to be considered one and the same, as the majority seems to conclude. "By definition, `separate maintenance is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other.'" Wilbournev. Wilbourne, 748 So.2d 184 (¶ 9) (Miss.Ct.App. 1999) (citations omitted) (emphasis added). To the contrary, a temporary support order may expressly include alimony, child custody or child support, and is grantedin the interim between the separation and the judgment of divorce. See
N. Shelton Hand, Jr., Mississippi Divorce, Alimony, and Child Custody § 8-3 (5th. ed. 2000). So, these two arrangements can easily be distinguished: a temporary support order applies post-separation while the couple awaits the final judgment of divorce, and the separate maintenance arrangement contemplates the couple's reconciliation.
¶ 61. Here, the Pittmans did not seek a separate maintenance order, rather the chancellor issued a temporary judgment concerning what used to be called alimony pendente lite. I do not agree that such order can be seen as parallel to a separate maintenance agreement as to fall under the heading of "line of demarcation." As previously described, with the two concepts having such different definitions, such line was not established, and I see no reason to count assets acquired while litigation is pending as anything other than marital assets. As well, neither this Court nor the supreme court has ruled that temporary support orders should be included under the Godwin rule. Thus, I find the majority's expansion of the doctrine to be improper in this situation. *Page 873 
¶ 62. Of more serious consequence is the reality that, were we to follow the majority's suggestion to expand Godwin to encompass temporary support orders, the wife would find herself in a "Catch 22" — she could either (1) do without a support order until the final divorce in order to entitle herself to equitable distribution of post-separation acquisitions (causing her to "starve" from the outset), or (2) forego equitable distribution to get a temporary support order upon separation, pending the divorce (causing her to "starve" in the end). The majority's attempt to further expand Godwin is unnecessary, is beyond our authority and does not comport with the aforementioned authorities. In accordance with our present law, the date for calculating equitable distribution in a case where a separate maintenance agreement has not been entered is the date of the actual judgment of divorce, regardless of the existence of a temporary support order. Thus, I dissent to this portion of the majority's opinion which elects to expand Godwin to set such date at the entry of a temporary support order, a rule I find not to exist.
¶ 63. Next, concerning the classification of the children's education trusts as marital property, I find that the trusts would better be classified as children's property, with the parents acting as trustees. I arrive at this conclusion by a simple comparison between the purpose of child support payments and the purpose of educational trust funds, which are both treated similarly in caselaw. First, I look to the purpose of child support as described in Professor Hand's book:
 The general function of required child support is to allow the child to grow and mature as a total person, and the basis of this obligated support rests upon the presumption that the natural parents will make the best decisions for their offspring as a part of their general care, maintenance, and support.
N. SHELTON HAND, JR., MISSISSIPPI DIVORCE, ALIMONY, AND CHILD CUSTODY § 11-11. Further, this Court has recognized, "[c]hild support is not normally considered the property of the recipient parent, rather that parent is deemed to be receiving the funds in trust for the benefit of the children." Carter v. Carter, 735 So.2d 1109 (¶ 33) (Miss.Ct.App. 1999) (citing Varner v. Varner, 588 So.2d 428, 432 (Miss. 1991)). Though the parents use the child support funds to "make the best decisions for their offspring as a part of their general care, maintenance, and support," the children are the actual "holders" of the funds, with the parents filling the role as trustees. I compare the purpose and disposal of child support with the purpose for education trust funds for children. The seminal case concerning the duty of a parent to pay college expenses of a child is Pass v. Pass, 238 Miss. 449, 118 So.2d 769
(1960). In Pass, the Mississippi Supreme Court stated:
 [W]here the minor child is worthy of and qualified for a college education and shows an aptitude therefor it is the primary duty of the father, if in reason financially able to do so, to provide funds for the college education of his minor child in the custody of the mother, where the mother and father are divorced and living apart.
Pass, 118 So.2d at 773.[1] If child support is considered to be paid "in trust" for the child, with the child as the actual owner of the funds and the parent assuming a de facto trustee position to use such support *Page 874 
to meet the needs of the child, certainly an education trust, set up through payments from a parent and specifically set aside to meet the educational needs of the child, should be treated the same. The majority's election to treat the educational trusts as marital property does not comport with what I have found to be controlling authority. Rather than classifying these funds as marital property, I would find the educational trust funds to be the children's property with the parents merely serving as trustees of the funds. Therefore, I dissent to this portion of the majority's opinion.
¶ 64. Next, concerning the husband's interest in his business, first I would point out what I fear to be a misconstrued statement of law. The majority states: "Had marital funds been used to buy that interest in the company, then Godwin would hold that the new asset is marital property despite a prior support order." I do not believe such a distinction needs to be made. This Court has stated before that, for purposes of equitable distribution, domestic services are equivalent to monetary contributions.[2] The question arises, why then cannot uncompensated work invested in business, which deprives the family of an income from otherwise gainful employment, be calculated as a marital asset? I submit that it can. The majority found that assets acquired from May 1997, when the husband started his business, through September 1997, when the temporary support order was entered, were to be considered marital assets, pursuant to Godwin. The majority further asserts that marital funds were not used to buy the husband's interest in the business. It is true that no cash actually changed hands initially; however, in place of his making a capital investment the husband did contribute a year's worth of full-time "sweat equity" to help get the business off the ground. In foregoing employment elsewhere, which would enable him to bring home a paycheck for the family's use, he deprived his family of further income. Consequently, I submit that a proper valuation of the husband's earning potential is in order as to properly give value to the work the husband did during this time, during which his family saw no tangible "rewards" in the form of monetary substance.
¶ 65. Also, concerning the business, the majority treads on thin ice in making the broad statement, "a spouse's income after a court order requiring support is separate property; what that spouse gains in lieu of a cash income would also be separate property. Here we do not have income but a property interest that is being earned over time in lieu of wages, a share of profits, or other income." As I previously pointed out, I believe that Mr. Pittman's decision to invest his time in the business deprived his family of other income; thus, I would classify any interest gained in lieu of wages to be marital property. Similarly, I take issue with the majority's statement, "It might be argued that Mrs. Pittman would be entitled to have the entire interest considered marital property since the process began before the temporary support order, but we conclude otherwise. Had Mr. Pittman quit on the day of the support order, apparently no part of the *Page 875 
interest would ever have been gained." As previously discussed, I would find that both Mr. Pittman's pre-support order earnings and those earnings acquired after the support order are marital assets and would award an equitable share to Mrs. Pittman for these earnings or interest her husband gained.
¶ 66. Finally, I disagree with the majority's decision to reverse and remand on the issue of attorney's fees. I would affirm on this issue as there is an obvious inability to pay on Mrs. Pittman's part, pursuant to the McKee principles. Also, in accordance with the other discrepancies I have found with the majority's opinion, to rule as I have suggested does not create the disparity of estates the majority has created in reversing the chancellor's initial judgment.
¶ 67. For the reasons previously cited, I concur with the majority's finding on those issues not raised in this separate opinion, and dissent to those issues addressed herein.
LEE, J., JOINS THIS SEPARATE WRITTEN OPINION. KING, P.J., JOINS THISSEPARATE WRITTEN OPINION ON THE ISSUE OF DECLARING THE CHILDREN'SEDUCATIONAL TRUST TO BE MARITAL PROPERTY.
[1] The Mississippi Supreme Court has modified Pass in subsequent cases; however, such modifications are not relevant to our discussion here and we do not find it necessary to discuss such subsequent modifications at this time.
[2] "We, today, recognize that marital partners can be equal contributors whether or not they both are at work in the marketplace."Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss. 1994). "We define marital property for the purpose of divorce as being any and all property acquired or accumulated during the marriage. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value." Id.