GRIFFIS, P.J.,
for the Court:
¶ 1. Lynn and Keith Ward agreed to a divorce on the ground of irreconcilable differences. They submitted to the chancellor the issues of spousal support, child support, division of assets, and attorney’s fees. Lynn now appeals the chancellor’s awards, and Keith cross-appeals. We find no error and affirm.
FACTS
¶ 2. Lynn and Keith were married on September 30, 1995, in Harrison County, Mississippi. At the time of the marriage, they lived in Long Beach, Mississippi. They moved to Anchorage, Alaska, in 1996, and then to Gulfport, Mississippi, in July 1999. During their marriage, Keith was employed with Federal Express as a pilot. He had served with the United States Air Force from April 1988 to June 2008. Lynn was a homemaker. In 1999, their first child, Logan, was born, and in 2001, their second child, Jackson, was born. In 2009, Jackson was diagnosed with type 1 diabetes.
¶ 3. In the spring of 2010, Keith filed for divorce. A trial was held in September 2010, and the chancellor issued his final judgment in January 2012. Keith filed a motion for reconsideration, and the chancellor issued a new judgment in August 2012. Both judgments are discussed in detail below.

A. January 2012 Judgment

¶ 4. The chancellor addressed property located in Kona, Hawaii. The chancellor *1247 found that the property was titled only in Keith’s name, although he had purchased it in 2004 with a friend. Keith stated at trial that he had paid $250,000 for the property and sold it for $145,000. His Rule 8.05 financial statement,[1] filed in 2010, showed the property to have a mortgage of $192,000. Keith testified that Lynn knew of the Kona property, but Lynn denied any knowledge of this property. Keith admitted that Lynn found out about the property after she overheard him discuss the property while on the phone. The property also included a tax loss of $47,000. The chancellor found that the deficient balance on this property was Keith’s sole responsibility. The chancellor also found that because the debt on this property solely belonged to Keith, it was only fair that he should be able to claim the tax benefit of the loss exclusively.
¶ 5. The chancellor also addressed FNS LLC, a failed pizza restaurant that Keith had opened in Germantown, Tennessee, in 2006. Keith had borrowed $250,000, with a business partner, to finance this operation. He also borrowed another $150,000 from his mother, Lynn Bates (“Bates”). Lynn testified that she had no knowledge of these transactions. Keith admitted that Lynn did not know about FNS at the time of its formation. But Lynn admitted that she attended FNS’s grand opening. Keith argued that because Lynn attended the grand opening, she should be liable for one-half of FNS’s deficiency. Lynn claimed that FNS had a loss value for tax purposes of $384,894, which Keith was able to claim as an annual tax loss. On his statement of liabilities, Keith showed a debt of $160,000 to Bates. The chancellor found that FNS debt belonged exclusively to Keith, as did the claim of its tax loss.
¶ 6. The chancellor found that Keith had a 401 (k) with Vanguard valued at $350,000, a Fedex Corporation employee pension plan valued at $245,507.73, and a pilot’s pension plan valued at $157,591.21. Because these were accumulated after the marriage, the chancellor executed a qualified domestic-relations order on each fund, which conveyed to Lynn a one-half interest in each. Lynn was awarded one-half of 15/20ths of Keith’s military-retirement benefits.
¶ 7. Finally, the chancellor found both parties at fault for the dissolution of the marriage, and awarded Lynn alimony of $4,000 a month.

B. August 2012 Judgment

¶ 8. Based on Keith’s motion for reconsideration, the chancellor modified his original judgment. In this judgment, the chancellor found Lynn partially responsible for the debts incurred in the Kona property and the FNS investment. Because Lynn had little income at that time, the chancellor required that Lynn forfeit any interest in Keith’s 401 (k) and deferred-compensation plan due to her share in the investments debt. The chancellor found that Keith did not commit waste by investing in the Kona property and FNS, and that to force him to bear the responsibility solely would not be fair. Finally, the chancellor found Lynn responsible for the dissolution of the marriage, citing her alcohol abuse, and lessened her alimony award to $2,500.
¶ 9. Lynn now argues on appeal that the chancellor erred in its Ferguson[2] and Armstrong[3] analyses. Specifically, Lynn asserts that the chancellor did not correct *1248 ly consider Keith’s waste of marital assets, and the chancellor incorrectly lowered Lynn’s periodic-alimony award. Keith cross-appeals, and argues that the chancellor erred in his calculation of Keith’s Air Force retirement.
STANDARD OF REVIEW
¶ 10. “This Court will not reverse a chancellor’s decision unless the chancellor’s findings are clearly erroneous [or] manifestly wrong, or the chancellor applied an incorrect legal standard.” Byrd v. Byrd, 100 So.3d 443, 447 (¶ 5) (Miss.2012) (citing Pearson v. Pearson, 761 So.2d 157, 162 (¶ 14) (Miss.2000)). “The chancellor’s ruling will be upheld if supported by substantial credible evidence.” Id. (citing Carrow v. Carrow, 642 So.2d 901, 904 (Miss.1994)). Additionally, “[c]hancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record.” Henderson v. Henderson, 757 So.2d 285, 289 (¶ 19) (Miss.2000) (citing Hammett v. Woods, 602 So.2d 825, 827 (Miss.1992)).
ANALYSIS

I.Equitable Division of Marital Property

¶ 11. Lynn argues that the chancellor erred when he divided the marital assets, because he did not allocate the waste of assets to Keith. Lynn contends that Keith is solely responsible for the waste of assets, because he made financial investments secretively and excluded her from financial decisions.
¶ 12. To support this contention, Lynn points to evidence that she never saw the Kona property and that her name was not on the title to the property. Additionally, she never knew of this property until she overheard Keith discuss the existence of the property while on the phone one day. Further, Lynn argues that because she had no knowledge that Keith was opening FNS, and because she was not listed as an owner or incorporator of it, FNS’s waste should be attributed to Keith.
¶ 13. Chancellors apply the Ferguson factors to marital property to make an equitable distribution of the property. Chancellors consider:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise;
3. The market value and the emotional value of the assets subject to distribution;
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
*1249 5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.
¶ 14. One factor a chancellor considers in dividing marital assets is the dissipation of assets. See Childs v. Childs, 806 So.2d 273, 275 (¶ 12) (Miss.Ct.App. 2000). Lynn asserts that Keith’s financial decisions amounted to great risk, and as such, a waste of assets. Thus, Lynn contends that the chancellor erred in not allocating these wastes to Keith.
¶ 15. In the August 2012 judgment, the chancellor found that neither party expended nor disposed of marital assets. The chancellor recognized that Lynn had reaped the benefit of one-half of a $54,000 tax refund based in part on the loss Keith incurred in FNS. Additionally, Lynn had left all financial decisions up to Keith. Thus, Lynn was partially responsible for the debts incurred in the Kona property and the FNS investment. Because Lynn had little income at that time, the chancellor required that Lynn forfeit any interest in Keith’s 401 (k) and deferred-compensation plan due to her share in the investments debt. The chancellor found that Keith did not commit waste by investing in the Kona property and FNS, and to force him to bear the responsibility solely would not be fair.
¶ 16. Here, the chancellor made an adequate application of the Ferguson factors. The chancellor discussed all eight factors addressed in Ferguson to determine that an amendment of the original order was necessary. In doing so, the chancellor included in his application of the Ferguson factors the possibility of past waste of marital assets. The chancellor found that neither party “expended or disposed of marital assets.”
¶ 17. Accordingly, we find that the chancellor’s August 2012 judgment is supported by substantial evidence and is not manifestly wrong or clearly erroneous. Thus, we find no error.

II. Periodic-Alimony Award

¶ 18. Lynn asserts that the chancellor erred when he lowered the periodic-alimony award from $4,000 to $2,500, because of the great disparity of assets and income between Lynn and Keith, the decrease in Lynn’s standard of living, and the failure to follow Mississippi case law in regard to spousal support.
¶ 19. In his January 2012 judgment, the chancellor granted Lynn periodic alimony of $4,000 per month. In August 2012, the chancellor issued a new judgment, and lowered the periodic-alimony payments to $2,500 per month.
¶ 20. In deciding whether alimony is appropriate, chancellors apply the Armstrong factors. This Court will not reverse the chancellor’s judgment if the chancellor applied the proper legal standard. Armstrong, 618 So.2d at 1280. The Armstrong factors are as follows:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
*1250 4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.

Id.

¶ 21. Here, after he divided the marital property, the chancellor applied the Armstrong factors to determine whether alimony should be awarded. The chancellor applied each factor and made a thorough analysis of each factor. After the motion to reconsider was filed, in his August 2012 judgment the chancellor lowered the original alimony award from the January 2012 judgment. The biggest difference between the chancellor’s analysis in January 2012 judgment and the August 2012 judgment was the allocation of fault or misconduct. Initially, fault or misconduct was attributed to both parties; in the August 2012 judgment, the chancellor attributed fault or misconduct to Lynn’s alcohol abuse.
¶ 22. The chancellor was presented with evidence to substantiate his decision. We find that he applied the correct legal standard. Therefore, we find no error as to this issue.

III. Calculation of Keith’s Retirement Account

¶ 23. Keith argues that the chancellor erred in his calculation of Keith’s retirement from the Air Force. Keith asserts that Lynn is entitled to only one-half of the retirement obtained during the marriage. He contends that any retirement earned outside of the marriage is not attributable to the marriage and should not be included in the marital property.
¶ 24. Keith joined the Air Force in April 1988, and married Lynn in 1995. He left active duty for the reserves in September 1991, and left the reserves in June 2008. From 1988 to 1995, Keith accumulated 2,120 retirement points. From 1995 to 2008, Keith accumulated 1,197 retirement points, totaling 3,317 retirement points. This means that 1,197 retirement points, or 36.0868% of the total retirement points, are attributed to the duration of the marriage. Keith argues that Lynn is entitled to one-half of 36.0868%, or 18.0434%, of his retirement points.
¶ 25. The chancellor determined that the marital portion of Keith’s Air Force retirement was fifteen-twentieths (15/20ths), or 75%, attributing 37.5% of the retirement points to Lynn. While Lynn and Keith were married only thirteen of the twenty years Keith was in the Air Force, there were two extra years (from 2008 to 2010) after Keith left the Air Force before he filed for divorce. Keith asserts that Lynn should have received a lesser amount of his retirement than the chancellor awarded, because the majority of Keith’s retirement points were earned pri- or to 1995.
¶ 26. In making an equitable division of property, chancellors are not required to make an equal division. Cham- *1251 blee v. Chamblee, 687 So.2d 850, 863-64 (Miss.1994). Chancellors are to use fairness as the “prevailing guideline in marital division.” Ferguson, 639 So.2d at 929. In his August 2012 judgment, the chancellor found that “all of the properties, real and personal, which the parties own, whether titled jointly or in only [a] party’s name, are marital assets,” except “the military retirement which was accumulated prior to the marriage.” In looking at the retirement points accumulated during the marriage, we find that the chancellor had more than one option when he calculated an amount. Keith asks us to give Lynn less of his retirement, because he earned most of the retirement before he married her. However, the chancellor made his calculations by dividing the fifteen years of their marriage by the twenty years he served with the Air Force and dividing by one-half. We do not find that the chancellor made an error in these calculations.
¶ 27. Accordingly, we find that the chancellor did not err in his application of the Ferguson and Armstrong factors, nor did he err in his calculation of Keith’s Air Force retirement account.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPEL-LEE.
LEE, C.J., IRVING, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. BARNES AND JAMES, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. UCCR8.05.

. Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994).

. Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993).