# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-00219-COA

JAMES DELAINE STACY                                    APPELLANT

v.

SANDY ROSS STACY                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/06/2023 |
| TRIAL JUDGE: | HON. ROBERT GEORGE CLARK III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES BRAD MARTIN |
| | MITCHELL HARRY TYNER |
| ATTORNEY FOR APPELLEE: | SANDY ROSS STACY (PRO SE) |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 08/27/2024 |
| MOTION FOR REHEARING FILED: | |

## BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1. After approximately thirty-one years of marriage, Delaine and Sandy Stacy separated. They eventually agreed to an irreconcilable differences divorce and participated in a trial concerning child support, custody and visitation of their adopted child, division of marital property, and alimony. The chancellor issued an order but failed to address any legally required factors in the distribution of property and alimony. Delaine now appeals. Finding it was error for the chancellor not to address the required *Ferguson* and *Armstrong* factors, we reverse and remand.

## FACTUAL AND PROCEDURAL HISTORY

¶2. Delaine and Sandy Stacy were married on November 18, 1989. Together, they had

three children—Kevin, who was thirty years old at the time of the divorce trial, Ryan, who then was twenty-four years old, and Lilly, who was a young child when they adopted her in 2020. Delaine and Sandy separated on November 20, 2020.

¶3. On December 10, 2020, Sandy filed a complaint for divorce in the Madison County Chancery Court against Delaine, alleging adultery, habitual cruel and inhuman treatment, and habitual use of opium, morphine, or other like drugs as grounds for divorce. She included irreconcilable differences as an alternative ground. She sought physical custody of Lilly and asked that Delaine be ordered to pay several expenses—including child support, Lilly's health insurance, Lilly's life insurance, and any extra expenses Lilly might incur. Sandy asked for exclusive use and ownership of the marital home and all marital property. Sandy also sought alimony from Delaine, as well as payment for all marital debts and her attorney's fees.

¶4. Delaine filed an answer and counterclaim on December 14, 2020. He essentially denied the allegations in the divorce complaint and the requested relief. He asserted a counterclaim for divorce on grounds of habitual cruel and inhuman treatment, habitual use of opium, morphine, or other like drugs, and indicated an agreement that the marriage was "irretrievably broken" and the parties were entitled to a divorce on the ground of irreconcilable differences.

¶5. After discovery and other pretrial matters, the parties entered into a consent for divorce based on irreconcilable differences on September 17, 2021. The chancellor entered an order on September 20, 2021, adjudicating the parties divorced because of irreconcilable

2

differences. The order specifically stated that the parties would withdraw their alleged fault-based grounds for divorce. Neither the order granting the irreconcilable difference divorce nor the agreement filed by the parties stated which issues were to be reserved for trial.

¶6. The case was called for trial on April 11, 2022, and August 29, 2022.[1] Both parties testified as to their accumulation of marital property during the marriage, their respective employment histories, monthly income, Delaine's retirement account with the Public Employees' Retirement System of Mississippi (PERS), monthly expenses, the purchase of the marital home, the adoption of Lilly, Delaine's disability, and other issues.

¶7. Delaine testified that he was a former law-enforcement officer with the Mississippi Highway Patrol and was presently totally disabled. His total monthly income ($4,511) came from his PERS retirement, his social security income ($1,750), and his disability income ($1,735). He received some extra money each month for Lilly because he was disabled ($1,026). Sandy previously worked for the State in the Information Technology Services Agency and made approximately $51,000 a year. Her employment was terminated in October 2020. Sandy had approximately $25,000 in her PERS account, which she had not drawn on at the time of the trial. Since losing her job, Sandy had been engaging in her own cleaning business for residential and commercial properties. She made approximately $800 a month.

¶8. The parties lived in a mobile home situated on 20.5 acres of land. It was purchased

---

[1] On April 11, 2022, Delaine was the only witness to testify, and he was called adversely by Sandy. He testified on direct and cross-examinations, but redirect did not occur. On August 29, 2022, Delaine was the first witness for redirect and re-cross-examination. Vanda Porter Lee and Sandy also testified.

in 2011 in some part with their eldest son, Kevin. There was some disagreement as to the exact nature of the land deal between Kevin and his parents, but suffice it to say, Delaine and Sandy both agree that Kevin lived on a two-acre tract of the 20.5 acres. Kevin put a mobile home on his part of the land. Since buying the property, the couple made many improvements to the land, although some disagreement exists as to how exactly those improvements were paid. The couple added a driveway, a shop, and a barn—the upper part of which was rented out to Vanda Porter Lee.

¶9. Sandy and Delaine each got their own appraisals on the couple's home, and both were entered into evidence. Delaine's report appraised 19.5 acres of the land at $50,000 (minus two acres for Kevin's home) and the mobile home at $58,000, for a total appraised value of land and buildings at $173,000. Sandy's appraisal valued the land at $70,000—with no amount listed for the mobile home—for a total appraised value of land and buildings at $204,000.

¶10. Finally, the parties testified as to the farm equipment they had on the land, vehicles, personal property, and how money was spent once Delaine received a large sum due to a resolution of his disability claims. There was considerable dispute over Delaine paying his parents $30,000 back that he testified they had loaned the couple. Sandy objected to the payment, and it was the source of tension. Also, the parties testified about Lilly's expenses, how they were presently being paid, and how they would request future payments to be handled. The court entered an order on February 6, 2023. The court's written order resolved the issues as follows:

a. Sandy was given physical custody of Lilly while the parties had joint legal custody[.]

b. In lieu of child support, Delaine would "assign" to Sandy "the full amount" of any monthly funds he received for Lilly. If and when social security payments stopped, Delaine was to pay 14% of his adjusted gross monthly income.

c. The chancellor also set out visitation for Delaine to have with Lilly and required Delaine to pay 80% and Sandy 20% of all cost with Lilly attending a private academy.

d. Delaine was to maintain medical, dental, vision, prescription, and hospital insurance for Lilly.

e. Delaine was given exclusive use and possession of the marital home just as the parties requested.

f. Delaine was to pay Sandy $75,000 for her share in the value of the land and the home.

g. Sandy was also awarded $18,600 of Delaine's state retirement, payable in monthly installments of $200 per month until paid in full. The chancellor did not address Sandy's PERS retirement account. The chancellor awarded Sandy $250 a month in rehabilitative alimony for twenty-four months.

h. The chancellor awarded Sandy the 2016 Hyundai Sonata and Delaine the Ford F150 and split the personal property.

¶11. Delaine now appeals, asserting five errors:

1. The court erred in its allocation and division of marital assets, specifically the marital home and Delaine's PERS retirement.

2. The court failed to consider the "*Ferguson* Factors" before dividing the marital assets of the parties.

3. The court erred in awarding Sandy rehabilitative alimony.

4. The court failed to consider the "*Armstrong* Factors" before awarding Sandy alimony.

5. The cumulative effect of the court's errors warrants reversal and remand of the case.

**STANDARD OF REVIEW**

¶12. It is well established that this Court's standard of review is "limited . . . when analyzing a chancellor's determinations in domestic-relations matters[.]" *Hardin v. Hardin*, 335 So. 3d 1088, 1092 (¶12) (Miss. Ct. App. 2022) (quoting *Gilmer v. Gilmer*, 297 So. 3d

5

324, 331 (¶13) (Miss. Ct. App. 2020)). "Where substantial credible evidence supports a chancellor's findings, we decline to reverse unless the chancellor abused [his] discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id.* "We review questions of law de novo." *Id.*

## ANALYSIS

¶13. On appeal, Delaine asserts that the division of marital property and alimony award were erroneous because the chancellor failed to address the relevant factors required by the Mississippi Supreme Court for either classification of awards. Those "factor tests" come from two supreme court decisions—*Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1994), and *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993). *See Lowrey v. Lowrey*, 25 So. 3d 274, 280 (¶7) (Miss. 2009).

### I. *Ferguson* Factors

¶14. We first address Delaine's argument that the chancellor's decision in the distribution of the marital property was erroneous for not addressing the required factors. "Chancellors apply the *Ferguson* factors to marital property to make an equitable distribution of the property." *Ward v. Ward*, 131 So. 3d 1244, 1248 (¶13) (Miss. Ct. App. 2014). The *Ferguson* case mandates consideration of the following factors:

    1.    Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
        a.    Direct or indirect economic contribution to the acquisition of the property;
        b.    Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
        c.    Contribution to the education, training or other accomplishment

6

bearing on the earning power of the spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So. 2d at 928.

¶15. "Chancellors are to consider those factors on the record and are to support their decisions with findings of fact and conclusions of law for appellate review." *Owen v. Owen*, 798 So. 2d 394, 399 (¶13) (Miss. 2001) (citing *Ferguson*, 639 So. 2d at 928). When this Court reviews "questions of equitable distribution" of the marital assets, we "look to the chancellor's application of the *Ferguson* factors." *Gregg v. Gregg*, 31 So. 3d 1277, 1280 (¶8) (Miss. Ct. App. 2010). This Court "do[es] not conduct a *Ferguson* analysis anew." *Dickerson v. Dickerson*, 34 So. 3d 637, 644 (¶24) (Miss. Ct. App. 2010) (citing *Goellner v. Goellner*, 11 So. 3d 1251, 1264-66 (¶¶45, 52) (Miss. Ct. App. 2009)). And while "we have not reversed and remanded in every case where an individual chancellor has failed to complete a proper . . . *Ferguson* analysis," *Godwin v. Godwin*, 758 So. 2d 384, 387 (¶11)

7

(Miss. 1999), the state appellate courts have still reversed and remanded cases lacking a *Ferguson* analysis.

¶16.    In *Owen*, Margaret Owen appealed the chancellor's division of marital assets and argued that a proper *Ferguson* analysis had not been conducted.  *Owen*, 798 So. 2d at 398. Specifically, she claimed that the chancellor's method of "basing the division of marital assets upon one factor—financial contributions to the accumulation of marital property—rather than upon all eight *Ferguson* factors" was erroneous.  *Id.*  The supreme court agreed and found that the chancellor "did improperly focus only on Kenneth [Owen]'s economic contributions to the marriage[.]"  *Id.*  After recognizing that "not every case requires consideration of all eight of the factors[,]" the court held that this case was one in which more than just one *Ferguson* factor was applicable, and "the chancellor should have addressed th[o]se factors on the record."  *Id.* at 399 (¶13).

¶17.    Delaine correctly alleges that the chancellor did not address the *Ferguson* factors whatsoever in the final divorce order.  The chancellor did not mention any *Ferguson*-factor analysis on the record at the conclusion of the testimony or in the written order.  The supreme court and this Court have reversed cases where the chancellor failed to address any of the *Ferguson* factors.  *See Yelverton v. Yelverton*, 961 So. 2d 19, 26 (¶¶10-11) (Miss. 2007); *Sandlin v. Sandlin*, 699 So. 2d 1198, 1204 (Miss. 1997); *Thompson v. Thompson*, 380 So. 3d 945, 955 (¶35) (Miss. Ct. App. 2024); *Williams v. Williams*, 303 So. 3d 824, 834-35 (¶¶39-40) (Miss. Ct. App. 2020).  Accordingly, we reverse the chancellor's decision and remand for a proper *Ferguson* analysis.

8

## II.    *Armstrong* Factors

¶18.    "In deciding whether alimony is appropriate, chancellors [must] apply the *Armstrong* factors." *Ward*, 131 So. 3d at 1249.  Specifically, those factors include:

1.    The income and expenses of the parties;
2.    The health and earning capacities of the parties;
3.    The needs of each party;
4.    The obligations and assets of each party;
5.    The length of the marriage;
6.    The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7.    The age of the parties;
8.    The standard of living of the parties, both during the marriage and at the time of the support determination;
9.    The tax consequences of the spousal support order;
10.    Fault or misconduct;
11.    Wasteful dissipation of assets by either party; or
12.    Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.

*Armstrong*, 618 So. 2d at 1280.  "Failure to make an on-the-record *Armstrong* analysis is manifest error." *Lowrey*, 25 So. 3d at 280 (¶7) (citing *Henderson v. Henderson*, 703 So. 2d 262, 266 (Miss. 1997)).

¶19.    In *Warren v. Rhea*, 318 So. 3d 1187, 1190 (¶13) (Miss. Ct. App. 2021), Ginger Rhea was awarded rehabilitative alimony following her divorce.  The chancery court's order explained that the decision was reached "based on the length of the marriage, as well as the differences in income, as well as income producing employment and in view of the fact that [Ginger] is not paying any child support." *Id.*  Her ex-husband Jason Warren appealed, alleging that it was "unclear" how the court arrived at such a decision "considering the lack of explanation of how the chancellor applied the *Armstrong* factors." *Id.*  This Court first

9

recognized that "the chancellor is not required to analyze each *Armstrong* factor individually in his opinion, but is required to view the overall combination of the factors as a whole, opting to address individual factors at his discretion." *Id.* at 1192 (¶24) (quoting *Blalack v. Blalack*, 938 So. 2d 909, 912 (¶7) (Miss. Ct. App. 2006)).

¶20. This Court went on to affirm the award of alimony, holding that "[a]lthough the chancery court in this case did not list its analysis of the *Armstrong* factors point by point, it is apparent that the court considered all applicable factors in the judgment." *Id.* The key distinction between that case and the present case is the simple fact that the chancellor's order in *Warren* provided specific factors that were utilized to reach the alimony award. Here, the chancellor merely declared that Delaine would pay Sandy alimony for two years and specified that the payment would be due on the 3rd of each month. There was no explanation or clarification on how that decision was reached and no mention of any *Armstrong* factors. Accordingly, this Court must reverse and remand the chancellor's decision based on not only the absence of any *Ferguson*-factor analysis but also the absence of any *Armstrong*-factor analysis.[2]

**CONCLUSION**

¶21. "Factor tests, such as provided in *Ferguson* for property division and *Armstrong* for alimony, must be considered on the record in every case." *Lowery*, 25 So. 3d at 280 (¶7) (citing *Ferguson*, 639 So. 2d at 928; *Armstrong*, 618 So. 2d at 1280). "These factor

---

[2] Further, "[e]quitable distribution is the first step in a divorce matter; therefore, upon remand the chancellor must revisit his awards of alimony and child support." *Lauro v. Lauro*, 847 So. 2d 843, 852 (¶23) (Miss. 2003).

considerations are not only essential for appellate purposes, but also for trial courts, as they provide a checklist to assist in the accuracy of their rulings." *Id.* "Following these guidelines reduces unintended errors that may affect the court's ultimate decision." *Id.* In other words, "[t]he absence of an analysis of these factors and failure to apply the law to the facts at hand create error." *Id.* Accordingly, we reverse the order and remand for further proceedings consistent with this opinion.

¶22. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**